THOMASON et al. v. CLARK COUNTY FARM BUREAU TOBACCO COOPERATIVE, Inc. et al.

Court of Appeals of Kentucky.

June 5, 1953.

cooperative could convey good title, this declaratory judgment action was brought. Thomason and Dickey have appealed from the judgment, which held that a deed from the officers of the cooperative would convey good title.

The sole question is whether the action of the board of directors of the cooperative, revoking the voting rights of some 5,300 stockholders, was valid. If this action, taken before the meeting at which it was voted to sell the warehouse, was invalid, it is conceded that the necessary majority vote for the sale of the warehouse was not obtained.

The articles of the cooperative provide for common stock having a par value of $1 per share, with voting rights, and preferred stock having a par value of $100 per share, without voting rights. Each common stockholder is entitled to only one vote, regardless of the number of shares owned by him. The bylaws do not permit voting by proxy.

At the time of organization of the cooperative, some 200 persons purchased common stock, in quantities sufficient to raise approximately $29,000. Preferred stock in the amount of $36,550 also was sold.

Under the bylaws, it was provided that any producer who sold tobacco at the warehouse of the cooperative must agree to take at least one share of common stock, the cost of which could be collected by being added to the warehouse charges. Pursuant to this clause, some 5,300 persons became stockholders by reason of marketing their tobacco at the cooperative's warehouse.

Each certificate for common stock issued by the cooperative contained the following provision:

"* * * If the Board of Directors shall find, subsequent to a hearing, that any of the stock evidenced hereby has come into the hands of any person who is not eligible for membership, or that the holder thereof has ceased to be an eligible member, or that the holder thereof has failed to cooperate with the Association, he shall have no privileges on account of such stock or vote or voice in the management and affairs of

J. Smith Hays, Jr., Winchester, Sam Milner, Paris, for appellants.

D. L. Pendleton, M. C. Redwine, Winchester, for appellees.

CULLEN, Commissioner.

The Clark County Farm Bureau Tobacco Cooperative, Inc., pursuant to a vote of a majority of such of its stockholders as were recognized by the board of directors as having the right to vote, contracted to sell its principal asset, a tobacco warehouse, to L. E. Thomason and Alvin Dickey. In order to test the question of whether the

the association (other than the right to participate in accordance with the law in case of dissolution and to receive the book value of such stock in the event of its sale or transfer as herein provided) * * *."

This provision in the stock certificates also appeared in the articles and bylaws of the cooperative.

When the cooperative was first organized, in 1945, its warehouse was the only one in Clark County. Subsequently, three privately-owned warehouses were opened, and it appears that these new warehouses have taken the major part of the tobacco marketing business. Many of the stockholders of the cooperative have sold their tobacco through the new warehouses. The cooperative has lost money.

In 1950, the board of directors of the cooperative called a meeting of the stockholders to vote on the question of selling the warehouse, but the meeting was not attended by a sufficient number of persons to obtain a majority vote of the stockholders for the sale. Thereafter, in November 1952, the board of directors designated a committee to hold hearings on the question of revoking the voting rights of noncooperating stockholders, pursuant to the provision in the articles and bylaws hereinbefore mentioned. Notices were mailed to the 5,300 producer-stockholders, at the addresses shown on the stock register, stating the time and place at which a hearing would be held on the question of revoking their voting rights. The hearing was held, and the committee then reported to the board of directors a finding that the 5,300 stockholders had failed to cooperate with the association. Thereupon the board adopted a resolution revoking the voting rights of these stockholders. There is nothing in the record to show any protest or objection to this action by any of the stockholders.

Since it appears that the board of directors carefully followed the provisions of the articles and bylaws in revoking the voting rights, there is no reason why their action should be held invalid unless the articles and bylaws violate a statute or invade some constitutional right.

The governing statutes, under which the cooperative was organized, are KRS 272.-100 to 272.350. These statutes do not guarantee a vote to every stockholder; they provide only that no stockholder may have more than one vote. KRS 272.190(4). Specific authority for determining the conditions of membership, and for suspending the rights of members or expelling members, is found in KRS 272.150, which states, among other things, that the bylaws may provide for:

"(i) The number and qualification of members of the association; the conditions precedent to membership; the conditions under which members may withdraw or transfer their stock; the conditions under which membership shall cease; the automatic suspension of the rights of a member when he ceases to be eligible to membership; the manner and effect of expulsion; * * *."

KRS 272.130 states that when the stock of a cooperative is divided into preferred and common, the articles may provide what privileges are granted to each class. There is no question of the validity of denying all voting rights to the preferred stockholders, and we see no reason why conditional voting rights may not be granted to the common stockholders.

We find nothing in the statutes to invalidate the provision for revocation of voting rights contained in the articles and bylaws of this cooperative.

There appears to be no basis for any claim of invasion of constitutional rights. The stockholders' contracts with the corporation, as evidence by the stock certificates, articles and bylaws, expressly provided for revocation of voting rights on the ground of noncooperation. In view of the purpose and object of cooperative marketing associations, lack of cooperation furnishes a sound reason for suspension of rights or privileges. The revocation clause affords reasonable protection to the stockholders in requiring that they be given an opportunity for a hearing before the revocation may be made.

There is no suggestion of unfairness or overreaching in the transaction. It appears that the price for which the warehouse was sold is a fair price. The competition from the privately-owned warehouse is such that it seems wise for the cooperative to have sold its warehouse while it could still obtain a fair price. If any sum remains from the sale price, after the preferred stockholders have been paid, all of the common stockholders will share equally.

The judgment is affirmed.